IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-10 Erie |
| | ) | |
| MARCUS DWAYNE THOMPSON | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION FOR SAFETYVALVE ELIGIBILITY**

AND NOW comes the United States of America, by its attorneys, Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, and Paul S. Sellers, Assistant United States Attorney for said District, and submits the Government's Response to Defendant's Motion for Safety Valve Eligibility filed at ECF Doc. 83, and states as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

On December 11, 2019, investigators with the Federal Bureau of Investigation (FBI) conducted a controlled, recorded purchase of approximately one pound of methamphetamine from Marcus Dwayne Thompson (the Defendant). On February 17, 2021, a federal grand jury seated in the Western District of Pennsylvania returned an indictment against the Defendant. The Indictment charged the Defendant with intentional and unlawful distribution of 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii). The FBI executed a search at the Defendant's residence on March 30, 2021, to coincide with his arrest, and located approximately 100 grams of cocaine, several small bags of methamphetamine, a firearm, and just over $15,000 in cash. The Defendant was arraigned and plead not guilty. On September 14, 2023, a change of plea hearing was held in front of the Honorable Susan Paradise Baxter and the Defendant Changed his plea to guilty. Sentencing is

scheduled for January 4, 2023. On December 21, 2023, the Defendant filed a Motion for Safety Valve Eligibility filed at ECF Doc. 83 to which the Government herein responds.

## II. RESPONSE

Many drug offenses carry statutory mandatory minimum sentences. However, a defendant may avoid a statutory mandatory minimum if that defendant satisfies the requirements outlined in 18 U.S.C. § 3553(f), known as the safety valve. Those requirements include a criminal history component, reserving eligibility to defendants who satisfy certain benchmarks. 18 U.S.C. § 3553(f)(1). Additionally, "[t]o be eligible for safety-valve relief, a defendant must show, inter alia, that he 'did not ... possess a firearm ... in connection with the offense.' " *United States v. Gonzales*, 513 F. App'x 141, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3553(f)(2) & U.S.S.G. § 5C1.2(a)(2)). A criminal defendant bears the burden of demonstrating that he is eligible for safety-valve relief. *United States v. Shwaish*, 2021 WL 1060349 (W.D. Pa., Mar. 18, 2021) (*citing United States v. Acosta*, 283 F. App'x 899, 905 (3d Cir. 2008) ("The defendant bears the burden to meet each of five criteria to receive the benefit of the safety valve provision." (citation omitted)) and *United States v. Sabir*, 117 F.3d 750, 754 (3d Cir. 1997)). A defendant must make such a showing by a preponderance of the evidence. *Id.*

### A. The Defendant is Ineligible for the Safety Valve Under a Proper Statutory Interpretation.

The criminal history component of the safety valve, 18 U.S.C. § 3553(f)(1), lists three items that make a defendant ineligible for safety-valve relief: more than 4 criminal history points, a prior 3-point offense, and a prior 2-point violent offense. An ordinary reader naturally understands that each listed item is an independent basis for ineligibility. This section reads, in relevant part:

> [T]he court shall impose a sentence pursuant to [the] guidelines ... without regard to any statutory minimum sentence, if the court finds at sentencing ... that -
> (1) the defendant does not have -
> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines."
>
> 18 U.S.C. § 3553(f)(1)

This section of the safety valve has led to a fairly dramatic circuit split along two competing interpretations. Four circuits interpret § 3553(f)(1) as forming a list with a negative prefatory phrase applying to each listed component, that is a defendant is safety-valve eligible if such defendant does not have any of more than 4 criminal history points, does not have a prior 3-point offense, and does not have a prior 2-point violent offense. *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022); *United States v. Haynes*, 55 F.4th 1075 (6th Cir. 2022); *United States v. Pace*, 48 F.4th 741, 759 (7th Cir. 2022); *United States v. Pulsifer*, 39 F.4th 1018 (8th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023). Three circuits interpret § 3553(f)(1) in simplistic conjunctive, as a single criterion, finding a defendant is safety-valve eligible so long as he does not have all three listed items, cumulatively. *United States v. Jones*, 60 F.4th 230 (4th Cir. 2023); *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021); *United States v. Garcon*, 54 F.4th 1274 (11th Cir. 2022) (en banc). Under this interpretation, a defendant with more than 4 criminal history points and a prior 3-point offense would remain eligible if that defendant lacked a prior 2-point violent offense.

In the instant case, the Defendant contends that he is eligible for the safety valve because, he claims, 18 U.S.C. 3553(f)(1) disqualifies only criminal defendants who fail all three criminal-history conditions set forth in that subsection – i.e., those few defendants who have "(A) more than four criminal-history points, (B) a prior three-point offense, and (C) a prior two-point violent

offense, cumulatively." Such an interpretation is incorrect. Section 3553(f)(1)'s plain text does not compel this reading of the statute for two independent reasons. First, this is not the sole interpretation that gives the word "and" conjunctive meaning. Another textually sound reading is that Section 3553(f)(1)'s negative prefatory phrase ("the defendant does not have--") modifies each of the items that follow individually, so that, to find the defendant eligible for safety-valve relief, the court must find that the defendant does not have criminal-history condition (A) and the defendant does not have criminal-history condition (B) and the defendant does not have criminal-history condition (C). That "distributive" reading also affords the word "and" its ordinary conjunctive meaning. Second, and in any event, the Supreme Court have both recognized that, when Congress uses conjunctions such as "and" and "or," those words' meaning is often ambiguous and informed by the statute's structure, context, purpose, and history.

Here, Section 3553(f)(1)'s structure forecloses the Defendant's reading, which would render an entire subparagraph (18 U.S.C. 3553(f)(1)(A)) superfluous. The Defendant's reading would also lead to absurd results. It would, for example, disqualify some comparatively less dangerous offenders – say, drug offenders whose only prior violent offense resulted in two criminal-history points – but not the most dangerous among repeat drug offenders: those with multiple prior 3-point violent offenses (so long as they do not also have a 2-point prior offense). Congress could not have intended such implausible results. In addition, by forcing an extreme and haphazard expansion of safety-valve eligibility, such a reading would disregard the uncontroverted view among legislators, at the time of the First Step Act's enactment in 2018, that the Act made only a "modest" expansion in safety-valve eligibility. Ultimately, this reading violates multiple principles of statutory construction, namely the canon against absurdity and the canon against surplusage.

**B. The Statutory Text, Structure, And Context Establish That Safety-Valve Relief Is Limited To Defendants Who Do Not Have Any Of The Criminal-History Circumstances Listed In 18 U.S.C. 3553(f)(1)**

"[T]he starting point in construing a statute is the language of the statute itself." *Randall v. Loftsgaarden*, 478 U.S. 647, 656 (1986). "Statutory language," however, "has meaning only in context." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415 (2005), *see also Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997) ( "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). Contrary to the Defendant's assertions, Section 3553(f)'s text does not compel the conclusion that drug defendants are eligible for safety-valve relief unless they possess all three disqualifying criminal-history circumstances in Section 3553(f)(1), and the statute's structure and context foreclose any such construction. Such analysis contends that the text of Section 3553(f) – combined with the "ordinary conjunctive meaning" of the word "and" – resolves the case in the Defendant's favor. That contention, however, turns on two necessary premises, neither of which is correct: 1) that only this reading affords the word "and" in 18 U.S.C. 3553(f)(1)(B) a conjunctive meaning; and 2) that Congress invariably uses the word "and" conjunctively.

This textual argument fails, first and foremost, because it wrongly assumes that only such reading gives the word "and" its prevalent, conjunctive meaning. *See, e.g., In re Velazquez*, 660 F.3d 893, 897 (5th Cir. 2011) (per curiam) ("[T]he word 'and' is often construed as conjunctive."). As a matter of formal logic, when the word "and" is used in its ordinary conjunctive sense, it "combines items." *Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts* 116 (2012) (hereinafter, "Scalia & Garner"). Thus, if one says, "You must have A, B, and C," the statements ordinarily means that "all three things" – A, B, and C – are required. *Ibid*. In

other words, the statement means: "You must have A" and "You must have B" and "You must have C." An additional complication arises, however, when a negative requirement – i.e., the word "not" – is inserted in the prefatory phrase. As Scalia and Garner observe, "with negatives, ... there are nuances." *Scalia & Garner*, at 116; *see Office of the Legislative Counsel, Senate Legislative Drafting Manual*, at 64 (1997) (devoting a subsection to "Statements in the Negative" within a section entitled "AND; OR") (capitalization altered). That is because the insertion of "not" raises a key threshold question: what does the prefatory negative "not" modify?

Consider the statement "You must not A and B." One possible meaning is that the word "not" modifies the combination of the items. So, for example, if one says, "To be safe, you must not drink and drive," the listener would probably understand, in context, that they must not do the two activities in combination, but that they are free to do each activity by itself. In other words, the listener would probably understand the prefatory phrase "you must not" to modify the combination phrase "drink and drive." Or, to illustrate the same point in more formal terms, the listener would understand the statement as: NOT (A AND B).

Depending on the context, however, statements taking the form, "You must not A and B" sometimes have a different meaning – a meaning that still uses the word "and" in the conjunctive, but that distributes the prefatory negative word "not" individually to each item that follows. Consider, for example, a hypothetical physician's admonition to a specific patient: "To be healthy, you must not drink and smoke." This statement again takes the form "You must not A and B." However, a reasonable listener would understand this phrase, in context, to mean that the listener must refrain not merely from drinking and smoking in combination, but also from engaging in either activity in isolation. In other words, the listener would reasonably distribute the prefatory phrase "you must not" to each item individually, even though the phrase is not itself repeated. Or,

to again illustrate the same point formally, the listener would understand the statement as: NOT (A) AND NOT (B).

Section 3553(f)(1) is written in precisely the same form as the statements just discussed. Like those statements, Section 3553(f)(1) requires proof that the defendant not have a set of enumerated conditions:

> [T]he defendant [must] not have--
> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
> (C) a prior 2-point violent offense, as determined under the sentencing guidelines[.]
>
> 18 U.S.C. 3553(f)(1).

One theoretically possible reading, then, is that the negative prefatory phrase ("the defendant does not have") modifies only the combination of the criminal-history conditions in subparagraphs A, B, and C. Under that reading, which the Defendant urges in this case, to find a defendant eligible for safety-valve relief, the court must find that he does not have (A and B and C).

On the other hand, another grammatically sound reading is that the negative prefatory phrase modifies each of the items individually. That is, to find the defendant eligible for safety-valve relief, the court must find that the defendant does not have (A) and the defendant does not have (B) and the defendant does not have (C). Under this reading, a defendant is eligible for safety-valve relief under Section 3553(f)(1) only if he does not have any of the listed criminal-history conditions. As in the statements discussed above, there is no way to know, in the abstract, which reading of the prefatory "not" in Section 3553(f)(1) is preferable – the combination reading urged by the Defendant or the distributive reading argued by the Government. The only way to

know, as in the statements discussed above, is to read Section 3553(f)(1) in context. *See, e.g.*, *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 n.5 (2021) ("Linguistic canons are tools of statutory interpretation whose usefulness depends on the particular statutory text and context at issue."). Here, as explained below, the structure and context make clear that the distributive reading of Section 3553(f)(1) is the better one.

In addition to side-stepping a textually sound distributive understanding of Section 3553(f)'s prefatory phrase, the Defendant's construction hinges on another flawed premise: it contravenes decades of jurisprudence, punctuated by decisions of the Supreme Court, recognizing that when Congress uses conjunctions such as "and" and "or" those meaning of those words is often ambiguous. As the Supreme Court explained more than 150 years ago, "[i]n order to [ascertain Congressional intent], courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.' " *United States v. Fisk*, 70 U.S. 445, 447 (1865) (emphasis omitted); *cf. De Sylva v. Ballentine*, 351 U.S. 570, 574 (1956) ("We start with the proposition that the word 'or' is often used as a careless substitute for the word 'and'; that is, it is often used in phrases where 'and' would express the thought with greater clarity. That trouble with the word has been with us for a long time[.]").

Here, structural and contextual considerations demonstrate that Section 3553(f)(1) is best read as a checklist, distributing the phrase "does not have--" to each criminal-history condition, such that a defendant qualifies only if he does not have more than 4 criminal history points, does not have a prior 3-point offense, and does not have a prior 2-point violent offense. Within Section 3553(f)(1)'s structure, both the rule against surplusage and Section 3553(f)'s careful formatting support a distributive reading. "[O]ne of the most basic interpretive canons[is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative

or superfluous, void or insignificant.' " *Corley v. United States*, 556 U.S. 303, 314 (2009) (*quoting Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Here, the combination reading would render subparagraph (A) – which requires defendants to "not have ... more than 4 criminal history points," excluding 1-point offenses – entirely superfluous. Under such interpretation, any time a sentencing court finds that the defendant satisfies Section 3553(f)(1)'s remaining subparagraphs – i.e., that they have both "a prior 3-point offense" under subparagraph (B) and "a prior 2-point violent offense" under subparagraph (C) – the court will necessarily also have found that the defendant has "more than 4 criminal history points" under (A). In all such cases, after all, the defendant's 2-point and 3-point offenses alone will have produced at least five criminal history points. Construing Section 3553(f)'s three subparagraphs as a package, would therefore violate the canon against surplusage. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 476-477 (2003) ("[W]e should not construe the statute in a manner that is strained and, at the same time, would render a statutory term superfluous.").

**a. Section 3553(f)(1)'s careful formatting supports a distributive reading of the statute's prefatory clause.**

That Congress placed an "em-dash" after the prefatory phrase, introduced each requirement with an enumerating letter (A, B, C), and separated the requirements with semicolons confirms the word "not" in the prefatory clause modifies each requirement individually. *See, e.g., Mitchell v. Chapman*, 343 F.3d 811, 830 (6th Cir. 2003). Consider, for example, the difference between a set of requirements appearing on one line, separated by commas – e.g., "you must not lie, cheat, and steal" - and a set of identical requirements appearing as they do in § 3553(f)(1):

> You must not--
> (A) lie;
> (B) cheat; and
> (C) steal[.]

The latter structure more clearly signals that the word "not" in the prefatory phrase modifies each item individually. Here, the Government's reading, which treats each criminal-history requirement as independently dispositive, fits that mold. In contrast, the Defendant's reading, which treats the criminal-history requirements as mere components of an undivided package, does the opposite.

**b. Contextual considerations confirm that, to be eligible for safety-valve relief, a defendant must not have any of the criminal-history conditions in Section 3553(f)(1).**

On the one hand, there is nothing special about the combination of (A), (B), and (C) that might weigh in favor of a package reading. Consider again the statement described above: "To be safe, you must not drink and drive." In that case, the reason a listener would reasonably understand "drink and drive" as a package is that there is something particularly dangerous about drinking and driving in combination. Here, in contrast, there is nothing special about the combination of the criminal-history elements hypothesized by the Defendant: more than 4 criminal history points, a prior 3-point offense, and a prior 2-point violent offense. That precise criminal history is meaningless. Indeed, far from advancing any coherent legislative objective, such a combination theory would contravene the "[a]xiomatic" principle that "laws should be construed to avoid an absurd or unreasonable result." *United States v. Female Juvenile*, 103 F.3d 14, 16-17 (5th Cir. 1996) (citing cases); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). It would all but eliminate the criminal-history requirement for safety-valve relief, except, as noted, for the rare defendant with the oddly specific criminal-history profile that fails all three conditions

in Section 3553(f)(1). This interpretation would also make potentially eligible criminal defendants that Congress could not have plausibly deemed worthy of relief.

A few examples illustrate the point. Consider a defendant with a lifetime of serious drug convictions. Under a package reading, such a defendant would not be disqualified from safety-valve relief, so long as they did not happen to also have a prior conviction for a violent offense that resulted in a sentence between 60 days and 13 months – but not longer. *See* U.S.S.G. § 4A1.1(a)-(b) (adding two points for each prior sentence of imprisonment of at least sixty days but no more than 13 months). Or consider a defendant with a single, but very serious, violent offense, for which he received decades in prison. Under such a reading, this defendant may still be eligible for relief, unless they have another violent, but less serious, conviction. If, however, such a defendant has a second conviction for another very serious violent offense (for which they received a lengthy prison sentence), such a defendant is again in the clear: that defendant does not have a prior 2-point violent offense and so they are not disqualified. Finally, consider a defendant with multiple drug and violent offenses, each of which resulted in a multi-year sentence. This defendant, too, could be eligible, so long as they do not also have a less serious 2-point prior violent offense. Such results are absurd, and their absurdity provides compelling contextual evidence against a context-free reading of the statute.

In contrast, it makes perfect sense to understand the criminal-history conditions in subparagraphs (A), (B), and (C) as independently disqualifying items. Consider again the statement discussed above: "To be healthy, you must not drink and smoke." The reason the listener would reasonably distribute the phrase "you must not" to each item in that statement is that each activity, on its own, can be detrimental to one's health. Here, it is sensible to infer that Congress similarly concluded: (A) if a drug defendant has committed multiple non-minor offenses

(so as to have more than 4 criminal history points, excluding 1-point offenses), that is disqualifying; (B) if a defendant has committed only one offense, but the offense is serious (a prior 3-point offense), that, too, is disqualifying; and (C) if a defendant has committed an offense that did not carry a long sentence (a prior 2-point offense), but was serious in any event because it was violent, that is disqualifying as well. *See* 18 U.S.C. 3553(f)(1)(A)-(C); U.S.S.G. § 4A1.1(a)-(b). In other words, each item, on its own, meets a level of seriousness that is reasonably viewed as disqualifying. The context, therefore, weighs strongly in favor of a distributive reading.

### C. The First Step Act's Legislative History Confirms That Thompson Is Ineligible For Safety-Valve Relief.

The legislative history of the First Step Act confirms that Congress did not intend such an extreme and haphazard expansion of safety-valve eligibility. Although the relevant legislative history is sparse, the debate surrounding the 2018 amendments to Section 3553(f), including statements of two of the First Step Act's sponsors, uniformly understood those changes to be "modest." *See*, *e.g.*, 164 Cong. Rec. S7745-01, S7749 (daily ed. Dec. 18, 2018) (Senator Leahy describing the bill as a "compromise" with a "modest expansion of the safety valve"); 164 Cong. Rec. S7648-01, S7649 (daily ed. Dec. 17, 2018) (Senator Grassley describing the safety-valve expansion as covering "low-level, nonviolent offenders"). No legislator, in contrast, described the safety-valve amendments as allowing relief for nearly every offender except those with a rare and meaningless combination of criminal-history points. To the contrary, guidance issued by the Senate Judiciary Committee shortly before the First Step Act's enactment made clear that "offenders with prior '3 point' felony convictions ... or prior '2 point' violent offenses ... will not be eligible for the safety valve[.]" *Senate Committee on the Judiciary, The First Step Act of 2018* (S.3649) – *As Introduced* (Nov. 15, *32 2018) (explaining S. 1917, § 102, 115th Cong. (1st Sess. 2018)).

The Sentencing Commission also construed Section 3553(f)(1)'s requirements as independently disqualifying. In an explanatory bulletin published shortly after the First Step Act's passage, the Commission posited several hypothetical applications of the Act's safety-valve amendments. *See United States Sentencing Commission, ESP Insider Express, Special Edition: First Step Act*, at 6-7 (Feb. 2019). In one of those examples, the Commission considered a defendant with "a total of six criminal history points" – specifically, "two prior 2-point convictions (for non-violent offenses)" and "two criminal history points for 'status' under § 4A1.1(d)." *Id*. at 7. The Commission's bulletin instructed that such a defendant would not be eligible for the "statutory safety valve" because they have "more than four criminal history points." *Ibid*. That conclusion is irreconcilable with the Defendant's theory, which would deem the same defendant eligible for safety-valve relief unless they also had a 3-point offense and a 2-point violent offense.

**D. Regardless, the Defendant's Possession of a Firearm Disqualifies him from Safety Valve Eligibility.**

Ultimately, this Court does not need to reach the statutory interpretation question that has so dramatically split the circuits. The Defendant in the instant case is ineligible for a reduced sentence under the safety valve due to his possession of a firearm. As noted above, the FBI executed a search at the Defendant's residence on March 30, 2021, to coincide with his arrest. Beyond locating additional drugs, paraphernalia, and large quantities of cash, investigators also found a firearm, specifically a semiautomatic Springfield XD 9mm handgun, multiple rounds of 9mm ammunition, and additional XD magazines. Investigators located the firearm hidden in the duct work of the Defendant's residence along with three bags of cocaine given a preliminary weight of approximately 100 grams. As noted earlier, additional quantities of methamphetamine were also located within the residence. To be eligible for safety-valve relief, a defendant must

show, inter alia, that he "did not ... possess a firearm or other dangerous weapon ... in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). The Defendant's possession of this firearm, in connection with the underlying drug crime, as part of the same course of relevant conduct, renders him ineligible for safety-valve relief.

The Sentencing Guidelines define "offense" broadly to include the "offense of the conviction and all relevant conduct." U.S.S.G. § 5C1.2 cmt. n. 3 (emphasis added). "[R]elevant conduct" includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of the conviction." Id. § 1B1.3(a)(1)(A), (a)(2). The commentary to the Guidelines further define "same course of conduct" as events or activities that are "significantly connected or related to each other so as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 cmt. n. 9(B). This conduct need not be the subject of a formal charge or an element of the offense of conviction, nor must it occur contemporaneously with the offense conduct. *United States v. Rudolph*, 137 F.3d 173, 177 (3d Cir.1998); *United States v. Kulick*, 629 F.3d 165, 171 (3d Cir.2010). In determining whether two offenses constitute the same course of conduct, case law requires consideration of three factors: "(1) the temporal proximity between the two offenses; (2) the similarity of the offenses; and (3) the regularity of the offenses." U.S.S.G. § 1B1.3 cmt. n. 9; *Kulick*, 629 F.3d at 171 (3d Cir.2010).

Conduct which post-dates the underlying criminal charges may be considered as relevant conduct where it bears a high degree of similarity to, and was part of the same regular and continuous pattern of conduct as, the charged offense. *See United States v. Gonzales*, 513 Fed.Appx. 141, 143–44 (3d Cir. 2013) ("Thirteen months had elapsed between the charge in the information and the arrest during which the firearms were found, but that gap alone does not

enable safety-valve eligibility”), *United States v. Wilson*, 106 F.3d 1140, 1144 (3d Cir.1997) (*citing United States v. Richards*, 27 F.3d 465, 468–69 (10th Cir.1994) (time gap of 17 months insufficient to trigger safety-valve relief)). In the instant case, there was approximately a 15 month gap between the charged conduct and the search of the Defendant’s residence. There is nothing to suggest a cessation of illegal conduct during this period. Moreover, when arrested, the Defendant was in possession of illegal drugs for distribution along with what appeared to be cash proceeds from substantial additional drug sales. Thus, it is irrelevant that the drugs and firearms were discovered only after the end date of the charged criminal conduct. See *Gonzales*, 513 Fed.Appx. at 143–44; *Rudolph*, 137 F.3d at 177; *Kulick*, 629 F.3d at 171. Notably, even when the Government does not seek a sentencing enhancement relative to a defendant’s possession of a firearm, the possession of that firearm still may serve as a sufficient basis to deny application of the safety valve to that defendant. *United States v. Betancourt*, 398 Fed.Appx. 748 (3d Cir. 2010) (Defendant who pleaded guilty to a felony drug offense was ineligible for safety valve relief even where defendant’s plea agreement included a firearm stipulation under which the Government agreed not to indict defendant for possessing a firearm in relation to a drug trafficking crime).

Therefore, separate and apart from the statutory interpretive questions which plague Section 3553(f)(1), the unambiguous application of Section 3553(f)(2) renders this question moot. This court can and should deem this Defendant ineligible for safety-valve relieve regardless of whether this court reaches the question of the particulars of this Defendant’s criminal history.

**E. Status Report as to Need for an Evidentiary Hearing.**

Given the disagreement as to the Defendant’s eligibility for safety valve, some questions of which may turn on specific factual findings, the Government agrees with the Defendant’s analysis that a brief evidentiary hearing may be required at the scheduled sentencing hearing on

January 4, 2023. Should the Government need to elicit such testimony, the Government would anticipate calling an agent or taskforce officer with the FBI's Erie Area Gang Law Enforcement (EAGLE) Taskforce to provide approximately fifteen minutes of testimony.

**III. CONCLUSION**

For the above reasons, the Defendant's Motion for Safety Valve Eligibility should be denied.

Respectfully submitted,

ERIC G. OLSHAN
United States Attorney

s/Paul S. Sellers
PAUL S. SELLERS
Assistant United States Attorney
PA ID No. 316175